DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1907.

---

## Masonic Fraternity Temple Association v. City of Chicago et al.

### Gen. No. 12,854.

1. INJUNCTION—*when dismissal of bill upon dissolution of temporary, proper.* The dismissal of the bill, as well as the dissolution of a temporary injunction granted thereon, is proper where the chancellor finds that the allegations of such bill are insufficient and are also incapable of amendment.

2. INJUNCTION—*when dismissal of bill upon dissolution of, improper.* The dismissal of a bill upon dissolving a temporary injunction granted thereon is improper where the court holds that its allegations are sufficient but that the preponderance of the evidence as shown by the affidavits presented upon a motion to dissolve is against its verity; in such case the bill should be retained for final hearing upon the merits.

3. BUILDING COMMISSIONER—*when decision by, not conclusive.* The action of a building commissioner and chief of police, as executive officers of a municipal corporation, in declaring a building unsafe, is not final and conclusive but is subject to review in the courts where the building in question was at the time of its erection constructed pursuant to existing ordinances.

4. ORDINANCE—*exent to which construction of private assembly halls may be regulated by.* Private assembly halls are not subject to the same regulation by ordinance as are public places of amusement, such as theatres.

5. ORDINANCE—*when municipal corporation without power to order reconstruction of buildings.* In order to attain additional safety from fire, a city is without power to order the reconstruction of a

(1)

2    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

building not used for public purposes, as are theatres, public concert halls, etc., where such building when completed complied with all existing ordinances and regulations.

6. MUNICIPAL CORPORATIONS—*how grants of power to, construed.* Where a statutory grant of power has been made to a municipal corporation, it will not be implied that the legislature intended to confer a power to interfere with private property where the fair meaning of the grant does not so authorize; nor will a municipality in such a grant be deemed to have acquired a power to enact retroactive legislation when the words of the grant may as well be construed to refer only to prospective regulations.

7. POLICE POWER—*scope of.* The police power of the state is incapable of exact definition or limitation but must be passed on by the courts as occasion arises, and while there is great importance to be attached to the distinction plainly to be made between the general police power of a sovereign state and the delegated police powers of a municipality, which are to be strictly construed as against private right, yet the police powers of a city should be and are broad.

8. POLICE POWER—*how must be exercised.* Wherever the exercise of the police power is undertaken by a municipal corporation, the exercise must be reasonable.

Bill for injunction. Error to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1906. Reversed and remanded with directions. Opinion filed January 7, 1907.

**Statement by the Court.** This is a writ of error prosecuted by the Masonic Fraternity Temple Association, a corporation, to reverse a decree of the Circuit Court of Cook county finding that there was no equity in an original bill of complaint and a supplemental bill of complaint filed by the plaintiff in error against the defendants in error, and that the said bills were incapable of amendment so as to obtain the relief prayed for therein; dismissing said original bill and supplemental bill for want of equity, and dissolving an injunction theretofore granted in said cause.

The court is asked to reverse the decree, and to remand the cause with directions to the court below to proceed to a final hearing, and with directions also to grant an injunction *pendente lite.*

The original bill was filed May 10, 1904. It alleged that the defendant, the city of Chicago, on the seventh day of May, 1904, acting through its co-defendants, George Williams, its superintendent of buildings, and Francis O'Neill, its chief of police, and his subordinates, had closed up certain rooms in a building of which the complainant was the owner, situated at the corner of State and Randolph streets in the city of Chicago, and known as the Masonic Temple, and had by force prevented, up to the filing of the bill, the complainant and the tenants and occupants of the various rooms from using and enjoying the same, claiming that the stairways in said building did not comply with the ordinances of the city of Chicago relating to buildings and stairways in buildings of the class to which complainant's building belonged.

The rooms, the use of which was said thus to be prevented, were rooms used for lodge and banquet hall purposes, and were described as room 613 in said building on the sixth floor, having a seating capacity of 100; room 912 on the 9th floor with the same capacity; room 913 on the ninth floor with a seating capacity of 100; Oriental Hall on the seventeenth floor with a seating capacity of 125; Drill Hall on the seventeenth floor with a seating capacity of 200; Corinthian Hall on the seventeenth floor with a seating capacity of 175; Consistory Hall on the eighteenth floor with a seating capacity of 225; Commandery Hall on the same floor with the same capacity; and Banquet Hall on the ninteenth floor with a seating capacity of 150.

The bill described the stairways in said building, and alleged they were designed so as to afford quick and rapid exit from said building, and that no person was ever injured in said building on account of or in consequence of a fire therein, or because of any inadequacy of means of exit or stairway facilities.

Also it alleged that the said building and the stairways therein were (in 1891) erected and constructed

4    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

by the complainant in accordance with the laws of the state of Illinois and ordinances of the city of Chicago existing at that time, and pursuant to permits issued by the properly constituted authorities of the city of Chicago, and under the supervision of said authorities, and were completed with the approval of said authorities in such accordance with the then existing ordinances.

It is further alleged that the said building and the stairways therein conformed at the time of filing the bill to all laws of the state of Illinois and all ordinances of the city of Chicago "relating to buildings of that character and construction in force at the date of its erection and construction," but that in closing said halls and rooms the city of Chicago and its officials, who were co-defendants, claimed to have acted by virtue of an ordinance relating to the department of buildings passed January 18, 1904, and amended January 25, 1904, providing that in the case of rooms in buildings of class 4, of a seating capacity less than five hundred, which in fire-proof buildings may be located in any story thereof, there shall be at least two flights of stairs from the floor in which said audience room or auditorium is located to the ground, each of which stairs shall be not less than four feet wide in the clear.

It alleged that the ordinances relating to the department of buildings contained, however, a provision still in full force and effect, as follows:

"Section 160. Excepting in cases where the immediate safety of the occupants of buildings is concerned, nothing in this ordinance shall be construed as requiring the alteration in the construction or equipment of buildings existing at the time of the passage of this ordinance and at that time complying with the ordinances at that time in force."

The bill proceeded to assert that the immediate safety of the tenants and occupants of the building was not concerned in and would not be endangered by the use and occupation of the halls in question for

the purposes and in the manner that the same were used and occupied; that the halls in question were used and occupied for lodge purposes almost exclusively in the evening, and almost entirely by adult men; that at the hours during which said halls were so occupied, the remainder of the building, consisting principally of offices, was practically unoccupied, and that the number of people in said building during the hours when said halls were used and occupied was not more than one-fourth of the number occupying said building during the business hours of the day; that in addition to the stairways hereinbefore described providing means of exit from the various floors of said building, said building was provided and equipped with fire escapes communicating with each floor of said building, and constructed of iron with landings upon each floor level, and attached to the exterior walls of said building; that in addition thereto said building was provided and equipped with fourteen passenger elevators and one freight elevator, all of which were of the most approved and modern design and ready at all times for immediate use; that each of said elevators had a carrying capacity of about sixteen persons and were capable of making a round trip safely and securely from the bottom to the top of said building and return within a space of one minute and a half, carrying the number of passengers aforesaid; that the elevators in said building were capable of carrying from the various floors of said building to the ground floor of the same an aggregate of 2,240 passengers within a space of fifteen minutes; that during the hours when said halls were used and occupied as aforesaid such number of said elevators were in actual use and operation, each of them manned by a competent and careful operator, as were reasonably necessary for the safety and security of the persons using and occupying said rooms and said building in the event of fire or any other emergency; that the stairways then

6    Appellate Courts of Illinois.

Vol. 131.]    Masonic Frat. Assn. v. City of Chicago.

in existence in said building afforded equal if not greater facilities for ingress and egress than would the stairways required under the ordinance in question.

Other allegations of the bill were that the city of Chicago had not commenced any suit against the complainant as provided in the building ordinance for any violation of the ordinance, but had proceeded arbitrarily without any process of law to close the doors to all of the said rooms and halls described, and refused to permit the tenants thereof to enter or occupy the same, and declared through its officials its intention to continue by physical force to prevent any one from making use of or occupying any of said rooms and halls; that said nine halls were leased to about twenty different tenants and were each and all occupied practically every night in the week by some one of the tenants; that ever since the completion of the building the complainant had been engaged in the business of renting out space therein to a large number of tenants at large pecuniary profits, and that the said rooms had ever since been and were then leased to various tenants for various terms of years at large rentals aggregating about $45,000 per annum; that the closing of the rooms had produced a large loss to the complainant, and if continued would cause a further loss and damage incalculable and irremediable; that many valuable leases would be forfeited, and the complainant lose all the benefits to be derived therefrom; that said building had at all times borne a good name and reputation as a safe, fire-proof building; that in consequence the complainant has been enabled to obtain higher rentals than it otherwise would; that the closing of the rooms in question if continued, would injure the reputation and largely decrease the rentals which the complainant could otherwise obtain from the remainder of the rooms and offices in said building; that many of the tenants occupying said other rooms

were doing so because of the tenancies of said halls, and that if the tenants of said halls were compelled to vacate and abandon the same, many other tenants occupying other rooms in the building would thereby be induced to vacate them.

It was also alleged that said building is a large and permanent structure, constructed as aforesaid almost entirely of iron, stone and tile, and was designed and constructed so as to conform to the kind and character of stairways hereinbefore fully described, and which were at the time of their construction in compliance with the then existing ordinances of the city of Chicago aforesaid, and that the stairways of said building were constructed in accordance with the general plans of the building; that if the complainant were now required to change and modify the construction of said stairways so as to conform with the said present building ordinances of said city, it would be necessary to tear down and reconstruct practically all of the entire iron and stone structure of said building; that such change would result in destroying the architectural completeness of said building, and also seriously impair the usefulness and convenience of the same when completed, and during the period of said reconstruction would practically render the entire building untenantable; that such change would submit the complainant to great loss and enormous cost and expense, aggregating the sum of at least $200,000; that the ornamental iron work of said building, almost all of which was utilized in the construction of said stairways, alone cost in the aggregate $104,400; that no part of the present stairways above the fifth floor of said building could be utilized in the construction of the other and different stairways, and that it would be necessary to demolish all of said stairways and reconstruct the same in other parts of said building before said stairways could be made to comply with the requirements of the present building ordinances.

8    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

The bill prayed that the city of Chicago and its building commissioner and chief of police and their subordinates be at once enjoined from interfering with the use and occupation of the said building, and especially of the rooms and halls described by the complainant, and its tenants, or any other person or corporation who might desire to use them for any lawful or legitimate purpose, and from closing said rooms or keeping them closed, and that upon hearing of the bill the injunction be made perpetual.

The statements of the bill were sworn to be true by the secretary of the Masonic Fraternity Temple Association.

Upon the filing of this bill an injunction was granted as prayed by the bill, restraining the defendants until the further order of the court; but with a proviso that until the further order of the court the rooms or halls referred to in the bill of complaint should be used for meeting purposes only between the hours of 6 P. M. and 6 A. M. of each week day, and from 6 P. M. of each Saturday until 6 A. M. of each following Monday, and that the use and occupation of said halls should be limited to the seating capacity of the same.

December 16, 1904, the complainant corporation filed a supplemental bill, in which it recited and confirmed the allegations of the original bill except as thereafter modified, and then alleged that since the filing of the original bill of complaint the city of Chicago had by its city council on November 21, 1904, passed a general building ordinance materially changing the provisions of the preceding ordinances in force, and that section 11 of said ordinance so passed was as follows:

"Section 11. Limitation of Floor Levels of Class IV. Auditorium Floor of Class IV. Height above Sidewalks. The following limitations of floor levels in buildings occupied either wholly or in part for the purposes of Class IV shall be observed in all cases. In buildings occupied either wholly or in part for

the purposes of Class IV no auditorium of a greater seating capacity than one thousand shall have the highest part of its main floor at a greater distance than ten feet above the adjacent sidewalk grades. No room or rooms used for the purposes of Class IV of a greater seating capacity than five hundred shall be at a greater distance from the sidewalk grade than thirty feet. No room or rooms used for the purposes of Class IV of greater seating capacity than two hundred shall be at a higher level above the sidewalk grade than forty-five feet. Provided, however, that in the case of a building used either wholly or in part for the purposes of Class IV and built wholly of fire-proof construction, a room or rooms to be used for the purposes of Class IV and of an aggregate seating capacity less than five hundred may be located in any story thereof; but in such case there shall be at least two separate and distinct flights of stairs from floor or floors in which such room or rooms are located, to the ground, each of which stairs shall be not less than four feet wide in the clear.''

It then alleged that in order to comply with the said ordinance of November 21, 1904, the complainant would not be permitted to use the halls and rooms of its building for any practical purposes whatever; that by said ordinance the seating capacity of all the halls and rooms mentioned in the bill of complaint must be limited to 500 in the aggregate; that if said ordinance should be enforced the complainant would be greatly damaged and its property rights taken away, and said building greatly depreciated in value.

It also set forth that since the issuance of the injunction *pendente lite* in the cause it had caused to be introduced into the city council a proposed amendment to the building ordinance then in force, a copy of which it annexed as an exhibit to its supplemental bill, declaring that nothing in the ordinance should be considered as requiring alteration in the construction or arrangement of stairs in fire proof buildings existing at the time of the passage of the ordinance and complying at the time of their construction with

10     APPELLATE COURTS OF ILLINOIS.

VOL. 131.]     Masonic Frat. Assn. v. City of Chicago.

requirements of the city of Chicago, whenever the aggregate width of the stairs from each floor of said building should not be less than eight feet in the clear at the treads; that action on said amendment being deferred, it was suggested by members of the council that a special ordinance applicable only to the complainant's building should be prepared, and that such a proposed ordinance was prepared, allowing the complainant to build an additional stairway from the third floor to the nineteenth floor of said building, to be five feet six inches in width in the clear, and upon giving bonds that this would be done in six months, the complainant should have said six months and thereafter, if the stairway was constructed, the right and privilege of using and occupying the different halls and offices in said building in the same manner as in the past. This proposed ordinance, which was annexed as Exhibit B to the supplemental bill, was alleged by the said supplemental bill to be under consideration by a committee of the council.

A copy of the amending ordinance of November 21, 1904, was also annexed to the supplemental bill as Exhibit C. Besides the section 11 hereinbefore quoted, it contains these provisions, among others, affecting the matters involved in this litigation:

"Section 1. Buildings of Class IV shall include all buildings used as assembly halls, whether for purposes of worship, instruction or entertainment, except as herein provided for buildings of Classes V and VIII. * * *

"Section 12. (Width of Stairways, Entrances and Exits.) The width of stairways in buildings used wholly or in part for the purposes of Class IV shall be eighteen inches for every one hundred of the aggregate seating capacity of all rooms in such buildings which are used for the purposes of Class IV; and for fractional parts of each one hundred seating capacity a proportionate part of eighteen inches shall be added to the width of such stairways; but no stairway in such building shall be less than four feet wide in the clear, except as hereinafter provided; and pro-

vided, further, that in any such building having a room or rooms used for the purposes of Class IV, the aggregate seating capacity of which shall not exceed two hundred and fifty, two separate and distinct three-foot stairways shall be permitted. All stairways shall have hand-railings on each side thereof. No stairway shall ascend a greater height than thirteen feet without a level landing, which, if its width is in the direction of the run of the stairs, shall not be less than three feet wide, or which, if at a turn of the stairs, shall not be of less width than the width of the stairs.''

The supplemental bill closed with the same prayer as the original bill. It was sworn to be true in substance and in fact by ''one of the agents of the Masonic Fraternity Temple Association.''

A joint and several answer of all the defendants to the original bill, and a joint and several answer to the supplemental bill were filed on January 3, 1905.

The answer to the original bill denies that the building in question was in every respect of complete fire-proof construction; denied that the stairways involved were constructed in accordance with existing laws when said building was constructed, or that said building was constructed under the permits of the city authorities and under their supervision and approval, and denied that the building and stairways at the time of filing the answer conformed to the requirements of the laws of the State of Illinois and the ordinances of the city of Chicago relating to buildings of the character of the building of the complainant. It alleged that, on the contrary, they were in violation of the building ordinance of January 18, 1904, and amended January 25, 1904, ''and now in full force and effect;'' providing that ''in case of rooms of buildings of said Class IV, which have a seating capacity of less than five hundred, which in fire-proof buildings may be located in any story thereof, there shall be at least two (2) flights of stairs from the floor in which the audience room or audi-

12    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

torium is located to the ground, each of which stairs shall be not less than four feet wide in the clear;" and in violation of a certain other ordinance adopted by the city council November 21, 1904. The answer then sets forth section 11 of said ordinance (as quoted in the supplemental bill of complaint), and alleged that said building from the ground floor to the third floor was equipped with two separate stairways of a width of about four feet ten inches each, whereas in buildings of Class IV each of said stairways to be in accordance with the ordinances should have a width of eighteen inches per each one hundred persons seating capacity in the entertainment rooms above the third floor, which would require a much greater width of stairways below said third floor than their present width, as the total seating capacity of the rooms in said building used for halls and lodge rooms was 2,028. It also alleged that complainant was violating the ordinances mentioned in that they had constructed and were maintaining a stairway above the third floor in said building of nine feet in width, whereas they were required by the ordinances before November 21, 1904, to maintain above the third floor two separate and distinct stairways, and under the ordinance of November 21, 1904, each of said stairs must be not less than four feet wide in the clear.

The answer further denied that the stairways were so constructed as to afford a quick or rapid exit from said building by its occupants, and averred that the defendants were informed and believed that during a fire in one of the rooms of said building a panic occured among those persons seeking to gain an exit from said building, and that several persons were injured in attempting to reach the ground floor of said building by means of said stairways, through their inability to reach said ground floor in the confusion; that said fire occurred a few days after the great public calamity known as the Iroquois fire, and

that there was at the time a great degree of nervousness and fear by reason of said calamity, and that when said fire started the stairways were unable to safely accommodate the great number of people endeavoring to get out of said building.

The answer admitted the closing of the rooms in question by the defendant because the same did not comply with the ordinance of January 18 and 25, 1904; and the defendant Williams, the building commissioner, averred that in his opinion "after careful consideration and examination of the premises, the immediate safety of the occupants of the building of complainant required the alteration in the construction of the stairways," and that "the safety of the occupants of said building would be jeopardized if the premises used in said building should be used and occupied without making the alterations required by the ordinances now in force concerning stairways in the building of the character of the building of complainant."

Further, it was alleged in the answer that a large number of the halls were used for general entertainments and dances, at which large numbers of women and children were present; that at night when the said halls are mostly in use, the greater portion of the elevators were not running, and at all times the said elevators were in charge of operatives totally unused to emergencies, and that the stairways in existence did not afford adequate protection to the tenants and occupants of said building or facilities for ingress and egress equal to those which those required by the ordinance would do. The damages which the bill alleged had and would result to the complainant by reason of the threatened action of the defendants was denied, and it was further denied that the building was constructed so as to conform with the ordinances in force at the time of its original construction, and denied that in order to comply with the ordinances now in force it would be necessary prac-

14    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

tically to reconstruct all the iron and stone structure of the building, or that the changes would destroy the architectural completeness of said building, or impair the usefulness or convenience thereof. It is alleged that, on the contrary, the changes required by the ordinances are simply the installation of new and widened stairways, which could be effected at a slight expense to complainant.

George Williams, the building commissioner of the city, made oath that this answer was true "except as to those matters therein stated upon information and belief, and as to such matters so stated he believes it to be true."

In the answer filed by the defendants the same day to the supplemental bill, the same denials and allegations were made, and these also: that the defendants believe that should a large fire occur in said building during the hours when it is fully occupied by tenants, or during the time when said halls were being used, a serious catastrophe would occur through the inadequate stairways; also that the defendants deny that said ordinance is unreasonable, but state that said ordinance was passed after a consultation of the committee on buildings with experts in the construction of buildings, and after mature deliberation, and is designed to promote the safety of tenants and inhabitants of buildings of Class IV.

March 6, 1905, a motion to dissolve the temporary injunction came on to be heard before the chancellor in the Circuit Court. In addition to the bills and answers, various sections of the ordinances of the city of Chicago, and various affidavits were introduced at said hearing. Among them was an affidavit of the secretary of the Masonic Fraternity Temple Association concerning negotiations between a committee of the city council of Chicago on Class IV buildings, and the association, in which a majority of the committee, before the passage of the ordinance of November 21, 1904, expressed themselves as of the opinion that it

would be manifestly unjust to require the association to comply with the conditions of the proposed ordinance, and that relief should be granted by means of a special ordinance, of which the general terms were then and there practically agreed on. This statement was confirmed by affidavits of two members of said committee.

The defendants introduced affidavits to show that the ordinances of January 18, 1904, and section 11 thereof, had not been amended or changed in any particular except by an amendment of November 28, 1904 (this appears plainly to be a clerical error for November 21, 1904), and that the building of the complainant did not comply with the provisions of said ordinance before or after amendment. There was also an affidavit of George Williams, that among his duties as building commissioner for the city of Chicago in 1904, was the issuance and revocation of permits for the opening of certain buildings, halls and rooms used for fraternity purposes in the city of Chicago; that the building of complainant did not comply with the ordinances in force on May 1, 1904, and he ordered the premises to be closed and the permit to keep the premises open revoked.

Affidavits were also offered by the defendants showing the construction of the stairways as they existed at the Masonic Temple, but nothing bearing otherwise than by such statement on their variance from the requirements of the ordinances or on their safety.

March 9, 1905, the complainant asked leave to file an amendment to its supplemental bill, which it then presented. The amendment made a more detailed and particular description of the various leases in existence between complainant and other parties as lessees for the rooms or halls described in said bill of complaint, and averred that the total amount of rental annually received from the said halls under and by virtue of the said leases was in excess of $47,733 an-

16     APPELLATE COURTS OF ILLINOIS.

VCL. 131.]     Masonic Frat. Assn. v. City of Chicago.

nually, and that the complainant was the owner of personal property in the said rooms of the value of at least $18,000, and that if the complainant were denied the use of said halls for the purposes for which the same were originally constructed and have ever since been used, the said goods would be of practically no use or value whatever.

A paragraph of said proposed amendment was as follows:

"Your petitioner further shows that the hereinbefore mentioned halls are occupied principally by adult men during the evening hours and have, as is shown by the bill of complaint herein, an aggregate seating capacity of about 1,350; that said Sections 11 and 12 of said Building Ordinances, passed as hereinbefore set forth on November 21, 1904, and especially as construed by the defendants herein and sought to be enforced by them, are unreasonable, vexatious and discriminatory as against complainant in this, that while complainant and its aforesaid tenants are denied the right to use and occupy said halls by more than 500 persons in the aggregate in all of said halls at any one time, nevertheless during the business hours of the day the remainder of said building is occupied by about four times the number of persons in said building during the time that said halls are occupied in the evening hours, and throughout the city of Chicago there are large numbers of buildings occupied daily by many times the number of persons that said halls have the capacity to accommodate, although no greater danger exists in the use and occupation of the halls in the manner that the same have heretofore and are now being used and occupied than exists in the use and occupation of complainant's building by its tenants and occupants during the daytime and of said other large number of buildings in the city of Chicago as aforesaid."

Other allegations of said proposed amendment were that section 160 of the building ordinance in the original bill set forth, and still in force, exempted the halls in question from the operation of sections 11 and 12 of the amending ordinance passed Novem-

ber 21, 1904; that the city council had never in any way found or determined that the immediate safety of the occupants of complainant's building and the halls in question was concerned, and that therefore the building and halls were governed by sections 11 and 12 of the said ordinance of November 21, 1904; that as a matter of fact said "immediate safety" was not concerned, but that nevertheless either the city council had undertaken to delegate to the defendants, George Williams as superintendent of buildings, and Francis O'Neill as chief of police, the power to determine whether the "immediate safety" of the occupants of said building and halls was concerned, or the said Williams and O'Neill had arrogated and assumed to themselves such a delegation of power; and that said attempted delegation and attempted arrogation of power were wrongful and void and contrary to the constitution of the United States and of the State of Illinois, being an attempted delegation of legislative authority to ministerial officers, and therefore the said "Sections 11 and 12, especially as construed and sought to be enforced by the defendants," were "contrary to the constitution of the State of Illinois and the constitution of the United States in that they" were "not uniform in their operation" and were "in the nature of special legislation and" denied "to the complainant the benefit of the uniform operation of the law and of the ordinances of the city of Chicago."

Further it was charged that so far as said sections 11 and 12 governed or attempted to govern the use and enjoyment of the building, halls and stairways of the complainant, they were null and void, because they violated the fifth and fourteenth amendments to the constitution of the United States and section 2 of article II of the constitution of the State of Illinois, and deprived complainant of its property and the use and enjoyment thereof for the purposes for which the same was constructed, without due process

18    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

of law, and also violated section 11 of article I of the constitution of the United States, and section 14 of article II of the constitution of Illinois, because they were retroactive and impaired the obligation of contracts entered into between complainant and other persons upon the faith of the compliance of said building with the existing ordinances of the city of Chicago at the time of the erection of the building and the construction of the halls therein.

One of the directors of the complainant corporation made oath to the statements and allegations of said proposed amendment.

March 10, 1905, the chancellor entered an order denying the motion of complainant for leave to amend its supplemental bill, and also a decree which dissolved the injunction as moved by the defendants, and further finding that there was no equity in the original and supplemental bills of complaint, and that the said bills were incapable of amendment so as to obtain the relief prayed for, dismissed the same for want of equity at complainant's cost.

From this decree an appeal was prayed to this court, which was dismissed on the ground that constitutional questions were involved. Thereupon a writ of error was by the complainant sued out of the Supreme Court to the Circuit Court and made a *supersedeas*. This was dismissed by the Supreme Court, however (Masonic Fraternity Temple Association v. City of Chicago, 217 Ill. 58), on the ground that the jurisdiction of the cause lay primarily with this court. The present writ of error was then sued out and made a *supersedeas*, and the assignments of error are that the Circuit Court erred in dismissing the bills of complaint for want of equity, and that it erred in holding the said original and supplemental bill incapable of amendment and denying leave to amend the same, and in dissolving the injunction issued in the cause.

JUDAH, WILLARD & WOLF and ALLEN G. MILLS, for plaintiff in error.

JOHN W. BECKWITH, for defendants in error; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In considering the present writ of error two questions present themselves: First. Were the bills properly dismissed by the court below for want of equity on the dissolution of the preliminary injunction? Second. If they were not, and the cause must be remanded for a trial on the issues made by the bills, answer and replications, should an injunction *pendente lite* be ordered?

In finding an answer to the first question, it is plain that we must look at the face of the bill and supplemental bill and, as we think, of the proposed amendment. That on this question we should not consider the answers and affidavits which were presented on the motion of the city to dissolve the injunction, follows from the fact that the bill being for a permanent injunction solely, the motion to dissolve, so far as it was based on the sufficiency of the allegations of the bills, was properly treated as a demurrer to the same. The chancellor below was justified in dismissing the bills as well as dissolving, the injunction, if he properly held the allegations insufficient and incapable of amendment. This is precisely what he did hold, as shown by his order. But he would not have been so justified simply because he held on the bills, answers and affidavits that the preponderance of evidence on the motion to dissolve the injunction was with the defendants. In that case, if he found that the allegations of the bill and supplemental bill were sufficient if sustained to justify the interference of the court, he might indeed properly have dissolved the preliminary injunction,

20    Appellate Courts of Illinois.

Vol. 131.]    Masonic Frat. Assn. v. City of Chicago.

but he should have retained the bills for a final hearing. We think too that under such circumstances he should have allowed, and that it would have been an abuse of his discretion not to have allowed, the amendment offered by the complainant.

We do not think he would have refused it in any such case. He held that even if received it would have been futile to alter the status of complaint before the court, and treated the bill and supplemental bill as though they had been amended as proposed and then demurred to.

We shall do the same in disposing of the first question raised. The only alternative to this view would be to consider that the cause came on for final hearing on March 10, 1905. After a careful consideration of the history of the cause and the terms of the order, we do not think that such a claim, even if it were made by the defendants in error, which it does not clearly seem to be, could be sustained. The order might perhaps have been less ambiguously worded and might have been made clearer by punctuation, but we do not think that the cause is recited as "coming on to be heard" upon the bill, answer and replication and on supplemental bill, and answer and replication and on affidavits and other evidence on argument, but that it is recited as "coming on to be heard on the motion of the defendant to dissolve the injunction heretofore granted herein," which motion was based upon the original bill of complaint, answer and replication, supplemental bill, answer and replication, affidavits, other evidence and arguments.

The order is read by us as though a large portion of the first clause was parenthetical, and as follows:

"This cause coming on to be heard on motion of the defendants to dissolve the injunction heretofore granted herein (upon the original bill of complaint and the answer of the defendants thereto and the replication to said cause, and upon complainant's supplemental bill of complaint, the answer of defendants thereto, and the replication to said answer, and

certain affidavits filed and read in support thereof, and in opposition to said motion, together with certain other evidence and upon argument of counsel), the court being fully advised in the premises doth find there is no equity in the original bill of complaint and the supplemental bill of complaint filed herein, and that the said bills are incapable of the amendment so as to obtain the relief prayed for.

"It is therefore ordered, adjudged and decreed that said motion of the defendants to dissolve said injunction be and the same is hereby sustained, and the said injunction is hereby dissolved.

"It is further ordered, adjudged and decreed that said original bill of complaint and said supplemental bill of complaint as amended be and the same are hereby dismissed for want of equity," etc.

The bill, supplemental bill and amendment are fully abstracted in the statement prefixed hereto. Together with much that seems to us immaterial, they contain allegations which raise fairly enough, and even without the proposed amendment, in our opinion, raise fairly enough the question of the power of the city council of Chicago to pass the ordinances of January 18, January 25, and November 21, 1904, respectively. They raise also the question of the reasonableness or unreasonableness and consequent validity or invalidity of these ordinances as applied to the plaintiff in error's building. To a certain extent they raise also a question of the proper construction of these amending ordinances as applied to and construed with other sections of the so-called building ordinance of the city of Chicago not specifically therein mentioned as amended.

Questions are also raised in argument as to whether the ordinances were intended, or at least can be construed to affect buildings erected prior as well as subsequent to their passage, and as they are somewhat ambiguously worded in that regard, what they mean as to "aggregate seating capacity." Do those words in the amending ordinance of November 21

22      APPELLATE COURTS OF ILLINOIS.

VOL. 131.]      Masonic Frat. Assn. v. City of Chicago.

mean "aggregate seating capacity" in each room or hall, or on each floor, or in the entire building?

The counsel for the plaintiff in error attributes to the city the construction most unfavorable to the interests of the plaintiff in error. They say that the city holds and is trying to enforce the construction that the ordinances require changes in their building already erected in compliance with ordinances in force when it was so erected; also the construction that the said ordinances delegate to the commissioner of buildings the power of determining whether the immediate safety of the occupants of a given building is concerned, without interference with his determination by the courts, and the construction that the "aggregate seating capacity," spoken of in the ordinance of November 21, 1904, means the aggregate seating capacity of all the rooms in the building together. This construction of the ordinance on the last point was repudiated by counsel for the city in oral argument before the court. He declared that the construction placed by the city on the words in question made them refer to the capacity together of all the rooms or halls on each several floor of the building. We do not think the ambiguity of importance in our consideration of this case, and shall ignore any question arising from it. Whatever construction should be given to these words, it would still remain true that the bills alleged that the halls of the plaintiff in error would have to be closed and unoccupied unless there was made a very expensive reconstruction of the building, which would not add to its safety or convenience, and this is the gist and weight of their complaint. In the view we take of the case also, the necessity of such a reconstruction at the expense alleged in the bills, and under the other circumstances therein set forth, would be equally as valid an objection to the ordinances as the forced disuse of the halls entirely.

Nor is it necessary for us to pass on the question

whether by their terms the ordinances complained of affect buildings already built, or apply merely to buildings thereafter to be constructed. We may say, however, that the complainant in its bills adopts the "retrospective" construction, and it is quite evident that the council's intention was to apply the rules laid down by the ordinances to old and new buildings alike. But however that may be, the complaint here is of an attempted enforcement of the ordinances as applying to a building alleged to have been constructed and completed in accordance with all the ordinances in force at the time of its completion, and the relief asked is against such an attempt. We shall treat the ordinances, therefore, as intended to apply to past as well as future constructions; but in all that we may hereafter have to say of them it should be noted that its application is entirely in relation to their validity and effect so far as they apply to buildings already completed. As to their bearing, under any combination of circumstances that may arise, on buildings not completed at the time of their passage, we are not to be understood as expressing any opinion.

The remaining question of construction is in effect whether after the passage of the three amending ordinances involved, on January 18, 1904, January 25, 1904, and November 21, 1904, respectively, section 160 of the building ordinance of the city of Chicago, adopted March 28, 1898, was still in force, and limited and controlled these amending ' ordinances. The section in question is as follows:

"Sec. 160. Excepting in cases where the immediate safety of the occupants of buildings is concerned, nothing in this chapter shall be considered as requiring alteration in the construction or equipment of buildings existing at the time of the passage of the ordinance, and at the time complying with the ordinance at that time in force."

This was part of the building ordinance which was passed by the council on March 28, 1898, and

24    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

this section, although other parts of the ordinance had undergone various minor changes by amendment, was in full force and effect when the amending ordinance of January 18, 1904, was passed. That ordinance explicitly declares itself to be an amendment to "the ordinance of March 28, 1898, and subsequent amendments," and explicitly also repeals sections 164 to 197 of that ordinance. But it does not repeal or modify section 160. The amending ordinance of January 25, 1904, merely changes certain provisions of that of January 18. The ordinance of November 21, 1904, also declares itself to be an amendment to the ordinance of March 28, 1898, and all subsequent amendments thereto, stating the amendment to be, striking out "of the ordinance" (of March 28, 1898) "all of that portion of the amending ordinance passed January 18, 1904, and all subsequent amendments thereto pertaining to and regulating buildings of class IV," and striking out "of said ordinance of March 28, 1898, sections 164 to 197, both inclusive, which said sections are hereby repealed."

This leaves no doubt that during the pendency of this suit, and on March 10, 1905, when the decree in this cause was entered, section 160 of the city building ordinance of March 28, 1898, was in force, and limited and construed the amending sections of January 18 and 25 and November 21, 1904. This indeed, although not distinctly admitted in the argument for the city, is not denied.

The point is made by the plaintiff in error, that as section 160 thus exempts its building from the operation of the amending ordinance, unless "the immediate safety of the occupants of the building is concerned," therefore, in the absence of a determination by the council itself that the immediate safety of occupants is thus concerned, the action of the building commissioner and chief of police as executive officers of the city of Chicago, interfering with its use of

its building, is illegal. To permit these officers so
to interfere, counsel say is tantamount to consent-
ing to a delegation to them of power that is vested
solely in the city council, or else justifying an arro-
gation to themselves of powers which have not been
delegated.

In the precise form in which this question is raised
we do not deem it necessary to pass on it. The build-
ing ordinance in force when the bill was filed, itself
purported to give the commissioner of buildings the
duty of construing it, and enforcing it by the aid of
the police department, and there might be emergen-
cies when it would seem unwise and unreasonable
not to leave to his decision what "immediate safety"
required or could dispense with. However that may
be, it is sufficient for us to say that in this case we
cannot assent to the proposition which seems to us
necessarily involved in the dismissal of the complain-
ant's bills, that the decision of the commissioner is
final and irreversible by the courts. The ordinance
did not authorize interference with this building, as-
suming the allegations of the bills in relation to its
being constructed in compliance with ordinance ex-
isting at the time of its completion to be true, unless
the immediate safety of its occupants was concerned.
That was a question of fact. Even assuming that
the commissioner of buildings had the right to pass
on it originally, nevertheless when these bills were
filed, the plaintiff in error was at liberty to contro-
vert his decision and have the court decide the ques-
tion on evidence. The bills, original and supplement-
al, contained allegations that the immediate safety
of the occupants of the building was in no way con-
cerned, and, as we have indicated in passing on the
dismissal of the bills, we must take these allegations
as true. Their force and effect in connection with the
answers of the defendants and the evidence pre-
sented on the motion to dissolve the injunction, we
will advert to hereafter. We think, therefore, on

26    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

this ground alone, that the court below erred in dismissing the bills. The question whether the immediate safety of the occupants of the building was concerned, was one on which plaintiff in error was entitled to a final hearing upon evidence. If the determination were in its favor, it would have been entitled to the relief sought.

We deem it proper, however, to proceed further in our discussion of this cause. If we assumed even that the authority to decide whether or not the immediate safety of the occupants of the building in question could be and was by the ordinance properly delegated to the building commissioner, and that his decision, moreover, could be and was by the ordinance made irreversible by the court, we should be brought to the questions: First, did the city council have power to pass any ordinance affecting the alteration or reconstruction of buildings, which, when completed, conformed to the ordinances then in force? And second, if such power existed, were the particular ordinances involved here within its power to pass and apply to the plaintiff in error's building, or were they, by reason of being unreasonable, invalid?

If the council had power to pass any ordinance concerning changes or additions to buildings already constructed and conforming to the ordinances of the time of construction, it derived it from clause 61 of section 1 of article V of the Cities and Villages Act, as follows: "The city council in cities   *   *   * shall also have power   *   *   *   *   Sixty-first, to prescribe the thickness, strength and manner of constructing stone, brick and other buildings, and construction of fire escapes therein;" or from clause 66 of the same section, which gives the city council the power "to pass and enforce all necessary police ordinances."

Clause 58 of this section, which gives the council power "to regulate places of amusement," is mentioned also in the argument of defendant in error as

a source of the power claimed to exist, but we think it plain that it has nothing to do with the case here presented.

The halls and assembly rooms of the plaintiff in error are alleged to be, and plainly appear from the record to be, lodge and meeting rooms of permanent and fixed societies who are tenants of the plaintiff in error. These rooms are not open to the general public, the public is not invited to them, and they are not, from their nature, properly subject to the same degree of public powers and supervision as are theaters, concert halls and such places of public amusement. This distinction must be kept in mind, and we must not be understood in this opinion to pass on the power of the city council under the special provision of clause 58 of the general language of clause 66 to make regulations, which the executive officers should enforce concerning the construction or arrangements of such places. They belong to an entirely different category of rooms or buildings, and the questions involved in their regulation are not before us.

It seems plain to us that clause 61 before quoted does not include the power to order a reconstruction or alteration of a building already built in compliance with existing ordinances.

The canons of construction of statutory grants of power to municipal corporations require us to hold that no power can be implied to interfere with private property which the fair meaning of the language used does not express, and that a power to make retroactive legislation will not be inferred when the words used may as well be construed to refer to prospective regulations. Indeed the city does not insist strongly upon any right gained by this clause, but lays the weight of its argument on its general police power given to it by clause 66.

Counsel for plaintiff in error argue with force that the legislature having delegated specific power

28    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

to the city council in relation to the construction of buildings that authority cannot be enlarged under the general police power, the presumption being that what is not expressed is intended to be excluded. The conclusion, however, is not satisfactory to us, and we must decline to place our decision on it. The police power of the state is incapable of exact definition or limitation, but must be passed on by the courts as occasion arises, and while there is great importance to be attached to the distinction plainly to be made between the general police power of a sovereign state and the delegated police powers of a municipality, which are to be strictly construed as against private right, yet the police powers of a city should be, and unquestionably are, in Illinois, broad. This is not only claimed by the defendants in error, but is admitted by the plaintiff in error.

We can easily conceive of circumstances and changes in physical, social or municipal conditions which might so require, to a certain extent, and in reasonable degree, in the case of buildings already constructed, alteration or addition, as to make the compelling of such alteration or addition a matter falling within the police power. We do not wish to hamper or prevent such action by an avoidable and unnecessary general limitation of the police power. Each case of its attempted exercise in a new direction must stand or fall by its own circumstances. But certain limitations of it are plain. The exercise of the police power, when it interferes with private property, in the interest of the public welfare or public safety must at least be reasonable.

"The difference between what is and what is not reasonable frequently constitutes the dividing line between a valid and void enactment by the legislature in the exercise of its police power," said Judge Peckham, speaking for the Court of Appeals of New York in the case of the Health Department of New York v. The Rector, Church Wardens and Vestry-

men of Trinity Church, 145 N. Y. 32, cited by both
parties to this controversy.

In Rideout v. Knox, 148 Mass. 368, the question
was whether a statute was constitutional as falling
within the police power of the commonwealth, which
rendered illegal, fences unnecessarily exceeding six
feet in height, and already maliciously erected for the
annoyance of neighbors. Judge Holmes, now of the
Supreme Court of the United States, in rendering
the opinion, said: ''It may be assumed that under
our constitution the legislature would not have power
to prohibit putting up or maintaining stores or
houses with malicious intent, and thus to make a
large part of the property of the commonwealth de-
pendent on what a jury might find to have been the
past or to be the present motives of the owner. But
it does not follow that the rule is the same for a
boundary fence unnecessarily built more than six feet
high. It may be said that the difference is only one
of degree; most differences are when nicely analyzed.
At any rate, difference in degree is one of the dis-
tinctions by which the right of the legislature to ex-
ercise the police power is determined. Some small
limitations of previously existing rights incident to
property may be imposed for the sake of preventing
a manifest evil; larger ones could not be, except by
the exercise of the right of eminent domain.''

It is not necessary to analyze or discuss the wealth
of authority furnished us by each side of this liti-
gation.

Even in those cases which go farthest in uphold-
ing the police power as against the rights of private
property, and do so with reference, not to the dele-
gated authority of a municipality, but to the inher-
ent power of the state itself, there can be nothing
found contradicting the proposition that a police in-
terference with private property rights for the pub-
lic welfare and social good, without compensation,
must be reasonable and justified by the existing con-

30    APPELLATE COURTS OF ILLINOIS.

VOL. 131.]    Masonic Frat. Assn. v. City of Chicago.

ditions. This is expressed most clearly by Judge Peckham (also now of the Supreme Court of the United States) in his opinion in Health Department v. Rector, etc., *supra*.

We find nothing to the contrary, but much in confirmation of it in the numerous Illinois cases cited by counsel here.

We do not think that on the face of these bills the ordinances complained of in them, construed as giving the commissioner of buildings the power claimed for him, are reasonable as applied to the plaintiff in error's building. It is asserted that the building was built in accordance with all laws and municipal regulations at the time of its construction, that it is absolutely fire-proof and safe; that for the thirteen years of its use no person was ever injured by fire therein, or because of any inadequacy of means of exit or stairways; that the number of people occupying the halls and assembly rooms, when they are so occupied, is not nearly as great as the number of those occupying the other rooms at other times of the day, but absent from the building when the halls are occupied; that there are ample elevator and stairway facilities; that to comply with the ordinances, if they can be complied with at all, so as to allow the use of these rooms for the purposes for which they were made, and for which they have been used for more than a decade, would cost at least $200,000, and result in a defaced but no safer building; and that the closing of the rooms and giving up their use for the purposes for which they are fitted and were made, would entail a loss of almost $50,000 a year upon the plaintiff in error, and the loss of the value of $18,000 worth of personal property.

If this municipal legislation so construed can be enforced under these circumstances, so can any other like regulation which might be made as to buildings only recently completed, in which millions of dollars have been invested. Although believed abso-

lutely safe, and although conforming in every respect to the requirements of the city as they were built, the council, under the advice of architects or engineers of more advanced or at least · different ideas, could, through executive officers of the city, compel their practical demolition and reconstruction. Men do not hold their property by any such insecure and dangerous tenure. These bills should not have been dismissed, but the amendment should have been allowed and the case brought to a final hearing.

It is not necessary to dwell long upon the question whether the injunction *pendente lite* should have been allowed to stand. Ordinarily the discretion of the chancellor below, who, theoretically at least, acted in the matter of the injunction on the sworn answers and the affidavits presented, as well as upon the bills, would not be overruled, but it seems plain to us that the position taken by him was that the action of the commissioner of buildings under the ordinance could not be interfered with, even were the allegations of the bills and amendment proven, and that his dissolution of the injunction was in reality rather the result of his belief that the bills were demurrable, and not amendable, than from any weighing of the evidence presented.

Despite the answers and affidavits offered by the defendants in error, no serious immediate danger seems to us to threaten the public, and no advantage is seen by us to exist in immediate action, if it should ultimately be determined that the ordinances are enforceable, commensurate with the loss which might by it unjustifiably fall on the plaintiff in error, if they are held invalid. The allegations of danger in the present use of the building in the answers are somewhat general and speculative, and could be made of almost any large building. Those concerning the cost of the required changes are direct contradictions of the bills, and should be brought to the test of evidence.

We, therefore, reverse the judgment and remand the cause for further procedings   not inconsistent with this opinion, directing also that the amendment to the supplemental bill offered on March 9, 1905, be allowed, and that an injunction *pendente lite* be allowed on the execution of a suitable bond, preventing, until the final hearing of the cause by the Circuit Court, interference by the defendants in error with the use and occupation by the complainant or its tenants, of the rooms in the Masonic Temple described in the bill and supplemental bill of complaint for lawful and legitimate purposes. 

　　　　　*Reversed and remanded with directions.*

Mr. Justice HOLDOM took no part in the consideration and decision of this cause, being a stockholder in the plaintiff in error corporation.